UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

HARTFORD FIRE INSURANCE
COMPANY a/s/o/ Fleet Trucking, Inc.,

                    Plaintiff,

    - against -

ROADTEC, INC.,

                    Defendant.

**MEMORANDUM OPINION
AND ORDER**

09 Civ. 06747 (PGG)

PAUL G. GARDEPHE, U.S.D.J.:

        This is a subrogation action brought by Hartford Fire Insurance Company, property insurer of Fleet Trucking ("Fleet"), against Defendant Roadtec, Inc. Roadtec manufactured and sold to Fleet a pavement milling machine[1] that caught fire at Fleet's premises on March 26, 2008, and was completely destroyed. (Cmplt. ¶¶ 1-2) Hartford alleges that design defects in the machine caused the fire. (Id. ¶ 3) Hartford originally asserted claims for strict liability and breach of the implied warranty of merchantability, but agreed to the dismissal of the strict liability claim on October 21, 2009. (Stipulation of Dismissal, Dkt. No. 11)

        Roadtec has now moved for summary judgment on Hartford's implied warranty claim, arguing that it disclaimed all implied warranties when it sold the milling machine to Fleet. Because Roadtec has not demonstrated as a matter of law that it effectively disclaimed the implied warranty of merchantability, its motion for summary judgment will be denied.

---

[1] The milling machine was designed to cut and remove the top layer of asphalt pavement in preparation for the installation of a new road surface. (Cmplt. ¶ 11)

**BACKGROUND**

On January 2 and 3, 2007, Fleet and Roadtec signed an Equipment Proposal in which Fleet agreed to purchase from Roadtec an RX-700-3 pavement milling machine (the "Machine"). (Def. R. 56.1 Stat. ¶ 6; Smith Aff., Ex. 2)[2] The Equipment Proposal sets forth a detailed description of the Machine and the purchase price, and makes two references to warranties. (Def. R. 56.1 Stat. ¶ 7; Smith Aff., Ex. 2) The phrase "Full Machine Warranty" is written in the document's "Notes" section, and in response to a query asking it to accept or decline an "Extended Engine Warranty," Fleet accepted this option. (Smith Aff., Ex. 2) Roadtec shipped the Machine to Fleet on January 15, 2007, and Fleet made a $475,913 payment for the Machine on March 1, 2007. (Def. R. 56.1 Stat. ¶ 17)

When Roadtec delivered the Machine to Fleet in January 2007, it also provided an Operation, Service & Maintenance Manual and a Parts Manual. (Id. ¶¶ 9, 12-13) Each manual was "hundreds of pages long" and included a warranty statement on the last page. (Pltf. R. 56.1 Counter-Stat. ¶ 39; Def. R. 56.1 Stat. ¶ 15; Smith Aff., Ex. 3) The warranty statement ("Warranty") reads as follows:

> Manufacturer (Roadtec, Inc.) warrants, commencing with the date of shipment to first end-user and for a period of 12 months thereafter or 1,000 hours of operation, whichever occurs first, all machinery and parts manufactured by Roadtec, Inc. to be free for defects in workmanship and material. **Warranty remains in force for the above time period only if all Manufacturer's operational procedures are followed and recommended maintenance is performed.** If, within such warranty period, any machinery or parts shall be

---

[2] To the extent that this Court relies on facts drawn from Defendant's Rule 56.1 statement, it has done so because Plaintiff has not disputed those facts or has not done so with citations to admissible evidence. Where Plaintiff disagrees with Defendant's characterization of the cited evidence, and has presented an evidentiary basis for doing so, the Court relies on Plaintiff's characterization of the evidence. See Cifra v. Gen. Elec. Co., 252 F.3d 205, 216 (2d Cir. 2001) (court must draw all rational factual inferences in non-movant's favor in deciding summary judgment motion).

> proved to Manufacturer's satisfaction to be defective, it shall be repaired or replaced, at the Manufacturer's option, F.O.B. Manufacturer's warehouse. All failed parts or components must be returned to Manufacturer prepaid for inspection before credit will be issued for new parts or components. Manufacturer's obligation hereunder shall be confined to such repair or replacement and does not include any charges, direct or indirect, for removing or replacing defective machinery or parts.
>
> Wear parts such as: conveyor lines, screed plates, cutter teeth, tooth holders, scraper blades, track pads, tires and conveyor belts are warranted only if found to be defective at time of shipment, but are not warranted for the warranty period as far as wear or abuse
>
> No warranty shall apply to machinery, or parts or accessories which have been furnished, repaired or altered by others so as, in Manufacturer's judgement, to affect the same adversely or which shall have been subject to negligence, accident or improper care, installation, maintenance, storage or other than normal use or service, during or after shipment. With respect to machinery, parts or accessories to Manufacturer's products which are furnished but not manufactured by Manufacturer, Manufacturer's warranty obligation shall in all respects conform and be limited to the warranty extended to Manufacturer by its supplier or, if none, to the warranties expressed herein.
>
> **The foregoing warranties are in lieu of all other warranties expressed or implied including, but not limited to any warranty or merchantability of fitness for a particular purpose, and Manufacturer shall not be subject to any other obligations or liabilities whatsoever with respect to machinery, parts, accessories or services manufactured or furnished by it or any undertakings, acts or omissions relating thereto. Under no circumstances shall Manufacturer be liable for any consequential or other damages, expenses, losses of delays howsoever caused. There are no warranties that extend beyond the description on the face hereof.**

(Smith Aff., Ex. 3) (emphasis in original)  The Warranty appears only in the manuals provided to Fleet at the time the Machine was delivered, and is not set forth in the "Equipment Proposal" that Fleet and Roadtec signed.  (Pltf. R. 56.1 Stat. ¶ 20)

3

After delivery, Fleet made three warranty claims concerning the Machine, all of which Roadtec honored.[3] (Def. R. 56.1 Stat. ¶¶ 24-29) On March 26, 2008, however, the Machine caught fire and was destroyed. (Id. ¶ 30) Hartford claims that the fire was caused by a burst hydraulic hose, which sprayed hydraulic fluid on the exposed exhaust manifold of the engine. The fluid ignited, causing a fire that consumed the Machine. (Cmplt. ¶¶ 14-15) Hartford further alleges that the engine should have been protected by a guard that would have prevented the hydraulic fluid from spraying onto the exhaust manifold. (Id. ¶¶ 16-18) According to Hartford, the failure to install such a guard was a design defect, and in selling a defective machine, Roadtec breached the implied warranty of merchantability and is liable for damages. (Id. ¶¶ 23-24)

Roadtec has moved for summary judgment on the ground that it "disclaimed the implied warranty of merchantability upon which Hartford bases its claim." (Def. Br. 5)

## DISCUSSION

Roadtec argues that it is entitled to summary judgment because: (1) the Warranty expressly disclaims any implied warranties, including the implied warranty of merchantability; and (2) Fleet "accepted and acquiesced to the Warranty's terms and exclusions in its course of dealing and performance." In particular, Roadtec notes that Fleet paid for the Machine after receiving the manuals that set forth the Warranty (and its exclusion of the implied warranty of merchantability), and then made three claims under the Warranty, which Roadtec honored. (Def. Br. 5-8)

---

[3] Fleet's warranty claims concerned replacement of "track rollers," a "breaker circuit," and an "EDC control kit," and were made in April, July, and October 2007 respectively. (Def. R. 56.1 Stat. ¶¶ 24-29)

4

As discussed below, Roadtec's motion will be denied. The Equipment Proposal constitutes a written contract between the parties, and it includes no disclaimer of implied warranties. Indeed, the Equipment Proposal states that the Machine is covered by a "Full Machine Warranty." Moreover, Fleet's claims under the Warranty are in no way inconsistent with its assertion in this lawsuit that it understood the Machine to be protected by a "Full Machine Warranty," as stated in the Equipment Proposal.

## I.      SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate only when the "pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Whether facts are material is a determination made by looking to substantive law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Whether "[a] dispute about a genuine issue exists" depends on whether "the evidence is such that a reasonable jury could decide in the non-movant's favor." Beyer v. County of Nassau, 524 F.3d 160, 163 (2d Cir. 2008) (internal quotation marks omitted). Courts "resolve all ambiguities, and credit all factual inferences that could rationally be drawn, in favor of the party opposing summary judgment." Cifra v. Gen. Elec. Co., 252 F.3d 205, 216 (2d Cir. 2001).

"In moving for summary judgment against a party who will bear the ultimate burden of proof at trial," as in the current case, "the movant may satisfy this burden by pointing to an absence of evidence to support an essential element of the nonmoving party's claim." Gummo v. Village of Depew, 75 F.3d 98, 107 (2d Cir. 1996) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986)). The non-movant "cannot avoid summary judgment simply by asserting a 'metaphysical doubt as to the material facts,'" Woodman v. WWOR-TV, Inc., 411

F.3d 69, 75 (2d Cir. 2005) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986)), and "'may not rely on mere conclusory allegations nor speculation, but instead must offer some hard evidence showing that its version of the events is not wholly fanciful.'" Golden Pac. Bancorp v. FDIC, 375 F.3d 196, 200 (2d Cir. 2004) (quoting D'Amico v. City of New York, 132 F.3d 145, 149 (2d Cir. 1998)).

In a contract case, summary judgment is appropriate only when a dispute is governed by contract language that is plain and unambiguous. Whether a contract is unambiguous is a question of law to be resolved by the Court. Brass v. Am. Film Tech., Inc., 987 F.2d 142, 148-49 (2d Cir. 1993). Under New York law, which governs here, [4] contract language is unambiguous when it has a "definite and precise meaning, unattended by danger of misconception in the purport of the [contract] itself, and concerning which there is no reasonable basis for a difference of opinion." Krumme v. Westpoint Stevens Inc., 238 F.3d 133, 139 (2d Cir. 2000) (quotation omitted); Tr. Of the Four Joint Bds. Health & Welfare & Pension Funds v. Penn Plastics, Inc., 864 F. Supp. 342, 345 (S.D.N.Y. 1994). Accordingly, Roadtec bears the burden of demonstrating that under the Equipment Proposal there is no reasonable basis for a difference of opinion regarding its alleged disclaimer of the implied warranty of merchantability.

---

[4] The Equipment Proposal contains no choice of law provision. (Def. R. 56.1 Stat. ¶ 7; Smith Aff., Ex. 2) The parties cite New York law in their briefs, however, and thus have implicitly agreed that New York law governs. See JA Apparel Corp. v. Abboud, 568 F.3d 390, 396 (2d Cir. 2009) (applying New York law on the basis that the "parties agree [that New York law] governs their contract dispute"); Corbett v. Firstline Sec., Inc., 687 F. Supp. 2d 124, 128 (E.D.N.Y. 2009) (applying New York law on the grounds that "both parties cite exclusively to New York contract law in their argument . . ."). Moreover, Fleet, the buyer of the milling machine, is based in the Bronx, and it appears that execution of the contract and the events giving rise to this dispute took place in New York. Accordingly, New York "'has the most significant contacts with the matter in dispute.'" See Auten v. Auten, 308 N.Y. 155 (1954) (quoting Rubin v. Irving Trust Co., 305 N.Y. 288, 305 (1953)).

## II. ROADTEC HAS NOT DEMONSTRATED THAT IT EFFECTIVELY DISCLAIMED THE IMPLIED WARRANTY OF MERCHANTABILITY

Roadtec argues that it is entitled to summary judgment because it "effectively disclaimed all warranties beyond the face of the Warranty under UCC § 2-316(2)" when it delivered the manuals setting forth the Warranty and its disclaimer of implied warranties. (Def. Br. 7) Hartford argues that the disclaimer is not effective because the Warranty was not a part of the Equipment Proposal, which is the only document that Fleet signed. (Pltf. Br. 2-3)

"It is well-settled that under New York law, parties to a contract may exclude or modify implied warranties so long as the warranty disclaimer is conspicuous and specific." Maltz v. Union Carbide Chems. & Plastics Co., 992 F. Supp. 286, 304 (S.D.N.Y. 1998) (citing N.Y. U.C.C. § 2-316(2)); see also Citicorp Leasing, Inc. v. Kusher Family Ltd. P'ship, 2006 U.S. Dist. LEXIS 50682 (S.D.N.Y. July 14, 2006). An effective disclaimer must be "specific, clear, and timely." Kolle v. Mainship Corp., 2006 U.S. Dist. LEXIS 28956, at *8 (E.D.N.Y. Apr. 20, 2006) (citing N.Y. U.C.C. § 2-316)). Here, Roadtec's disclaimer of the implied warranty of merchantability was neither timely nor conspicuous.

### A. The Disclaimer Was Not Timely

Roadtec's disclaimer does not appear in the "Equipment Proposal" that both parties signed. Roadtec argues that its disclaimer is nonetheless effective, because Roadtec "provided the Warranty Statement [including the disclaimer] in both the Owner and Parts Manuals when it delivered the Machine approximately one month before Fleet trucking completed the sale on March 1, 2007 [by paying for the machine]." (Def. Br. 6) (emphasis in original) Fleet maintains that the disclaimer is not effective because it does not appear in the Equipment Proposal.

Because the Equipment Proposal (Smith Aff., Ex. 2) describes the Machine and the terms of the sale in detail, including price, and bears the signatures of authorized representatives from both parties, it constitutes an enforceable contract.[5]  See Joseph Martin, Jr. Delicatessen, Inc. v. Schumacher, 52 N.Y.2d 105, 109 (1981).  To the extent that Roadtec argues that its post-contract submission of the manuals containing the Warranty effected an alteration of the contract, that position is untenable.  Once a contract is formed, additional terms proffered by a party "are to be construed as proposals for addition to the contract." N.Y. U.C.C. § 2-207(2). "Between merchants, such terms become part of the contract unless . . . they materially alter it." N.Y. U.C.C. § 2-207(2)(b).  Comment 4 to the UCC states that "[e]xamples of typical clauses which would normally 'materially alter' the contract and so result in surprise or hardship if incorporated without express awareness by the other party are:  a clause negating such standard warranties as that of merchantability or fitness. . . ."  N.Y. U.C.C. § 2-207 (Comment 4).

Accordingly, New York courts do not recognize warranty disclaimers that are first stated when a product is delivered, rather than at the time the parties struck the bargain for sale. See Laidlaw Transportation, Inc. v. Helena Chem. Co., 255 A.D.2d 869, 670 (4th Dep't 1998) (disclaimer not effective when it was written on the "delivery ticket," even though buyer signed the ticket); G.W. White & Sons v. Gosier, 219 A.D.2d 866, 867 (4th Dep't 1995) ("[A] disclaimer or exclusion of warranties delivered to the buyer after consummation of the sale is not effective unless the parties have entered into a separate agreement"); Tuck Indus. v. Reichhold Chems., Inc., 151 A.D.2d 566, 567 (2d Dep't 1989) ("[T]he warranty disclaimer, contained in an invoice apparently sent by [seller] . . . but not countersigned by [buyer], constitutes a material alteration of the alleged terms of sale. . . .  Hence, the warranty disclaimer is not part of the

---

[5]  Roadtec does not contend otherwise.

agreement between the parties."); First Sec. Mortgage Co. v. Goldmark Plastics Compounds, Inc., 862 F. Supp. 918, 934 (E.D.N.Y. 1994) (finding that "[seller]'s attempt to limit or disclaim warranties on the bill of ladings or invoices are not binding on [buyer]").

Here, a contract was formed when the parties signed the Equipment Proposal. The Equipment Proposal contains no disclaimer of implied warranties, but merely states that Roadtec is providing a "Full Machine Warranty." (Smith Aff., Ex. 2)  To the extent that Roadtec argues that the Warranty attached to the manuals disclaimed the implied warranty of merchantability, that disclaimer – delivered with the Machine and not disclosed at the time the contract was formed – constitutes an unenforceable "material alteration" to an already-formed contract.  Roadtec is not entitled to summary judgment on the ground that it disclaimed the implied warranty of merchantability.[6]

### B. The Disclaimer Is Not Conspicuous

As noted above, parties to a contract may exclude implied warranties so long as the warranty disclaimer is "conspicuous and specific." Maltz, 992 F. Supp. at 304.  Assuming arguendo that the law permitted Roadtec to alter the contract through submission of the Warranty at the time of delivery, Roadtec has not demonstrated as a matter of law that its warranty disclaimer is "conspicuous" within the meaning of UCC § 2-316(10).

---

[6] Hare v. Hoveround Corp., 2009 U.S. Dist. LEXIS 87146 (N.D.N.Y. Sept. 23, 2009), cited by Roadtec (Def. Br. 6) is distinguishable.  In that case, the buyer signed a delivery ticket containing the disclaimer and there was no formal contract.  Accordingly, the contract in that case was formed by a "present sale of goods," see N.Y. U.C.C. § 2-106, and included the disclaimer. Here, by contrast, a contract was formed when the parties entered into the Equipment Proposal, and the warranty disclaimer set forth in the manuals constitutes an attempted material alteration to an already-existing contract.

The UCC provides that "[a] term or clause is conspicuous when it is so written that a reasonable person against whom it is to operate ought to have noticed it." N.Y. U.C.C. § 1-201(10). "The test, accordingly, is whether a reasonable person would notice the disclaimer when its type is juxtaposed against the rest of the agreement." Commercial Credit Corp. v. CYC Realty, Inc., 102 A.D.2d 970, 972 (3d Dep't 1984). "The question of whether a particular disclaimer is conspicuous is a question of law to be determined by the Court." Carbo Inds., Inc. v. Becker Chevrolet, Inc., 112 A.D.2d 336, 339 (2d Dep't 1985); Kolle v. Mainship Corp., 2006 U.S. Dist. LEXIS 28956, at *9 (S.D.N.Y. Apr. 20, 2006).

This requirement is satisfied when the disclaimer is "set out in capital letters or otherwise drawn to the attention of the non-drafting party." Grupos Sistemas Integrales de Telecomunicacion v. AT&T Comms., Inc., 1996 U.S. Dist. LEXIS 2927, at *17 (S.D.N.Y. Mar. 11, 1996). Typically, a drafting party calls attention to a disclaimer by setting it apart from other provisions of the contract and printing it in a distinctive typeface. See Sky Acres Aviation Servs. v. Styles Aviation, 210 A.D.2d 393, 394 (2d Dep't 1994) (standard satisfied where disclaimer was "in bold type and readily noticeable"); Kolle, 2006 U.S. Dist. LEXIS 28956, at *9 ("The common practice of setting forth such language of limitation in large, boldface, type, often in an eye-catching location . . . meets this requirement [of conspicuousness]"); Dallas Aero. v. CIR Air Corp., 2002 U.S. Dist. LEXIS 21130, at *5 (S.D.N.Y. Oct. 31, 2002); aff'd, 352 F.3d 775 (2d Cir. Dec. 19, 2003) ("As Paragraph 8 of the Agreement is under the heading 'DISCLAIMER OF WARRANTY' and is in bold typeface, the requirements for a conspicuous writing are met and the disclaimer is valid."); Tulger Contracting Corp. v. Star Bldg. Sys., 2002 U.S. Dist. LEXIS 8620, at *5 (S.D.N.Y. May 14, 2002) (standard satisfied where "the heading of the section containing the limitations, entitled 'Warranty, Disclaimers, and Limitation of Liabilities,' is

10

printed in a boldface type that is conspicuously larger than the printed text on the remainder of the page. . . ."). By contrast, a disclaimer is not conspicuous when "written in small letters and buried within the body of the paragraph." Computerized Radiological Servs., Inc. v. Syntex Corp., 595 F. Supp. 1495, 1509 (E.D.N.Y. 1984), rev'd on other grounds, 786 F.2d 72 (2d Cir. 1986).

In this case, the disclaimer was written in bold, but was inserted at the end of two lengthy reference manuals, each of which was "several hundred pages long." (Pltf. R. 56.1 Counter-Stat. ¶ 39) This is not an "eye-catching location" that commands "the attention of the non-drafting party." Kolle, 2006 U.S. Dist. LEXIS 28956, at *9; Grupos Sistemas Integrales de Telecomunicacion, 1996 U.S. Dist. LEXIS 2927, at *17. Moreover, the disclaimer does not appear in the document that lays out the terms of the sale, but instead is set forth as the last page in a user's manual and parts manual. While a reasonable purchaser may be expected to read terms that are referenced near the signature line of a contract, see Hare, 2009 U.S. Dist. LEXIS 87146, at *25, there is no reason for a buyer to expect a warranty disclaimer to be set forth as the last page of a user's manual or parts manual. Accordingly, Roadtec has not demonstrated that its disclaimer is "conspicuous," and its motion for summary judgment will be denied.

### III.  THE PARTIES' CONDUCT DOES NOT DEMONSTRATE THAT THE BUYER WAIVED THE IMPLIED WARRANTY OF MERCHANTABILITY

Roadtec's last argument is that, even if the disclaimer is not a part of the parties' written contract, Fleet "accepted and acquiesced to the Warranty terms and exclusions in its course of dealing and performance." (Def. Br. 7) In support of this argument, Roadtec notes that "Fleet Trucking made three (3) Warranty claims on the Machine which Roadtec fully honored at no cost to Fleet Trucking pursuant to its obligations under the Warranty." (Def. Br.

8) Hartford responds that Fleet's requests for replacement parts demonstrate only that a warranty exists, and not that Fleet had agreed to Roadtec's disclaimer of the implied warranty of merchantability.

Section 2-316 of the U.C.C. provides that "an implied warranty can . . . be excluded or modified by course of dealing or course of performance." N.Y. U.C.C. § 2-316(d). A party arguing that such a contract modification took place, however, must offer "'proof of each element requisite to the formation of a contract, including mutual assent to its terms.'" Singapore Recycle Ctr. v. Kad Int'l Marketing Inc., 2009 U.S. Dist. LEXIS 68635, at *20 (S.D.N.Y. Aug. 6, 2009) (quoting Beacon Terminal Corp. v. Chemprene, Inc., 429 N.Y.S.2d 715, 718 (2d Dep't 1980)).

Accordingly, "for a course of performance to demonstrate mutual assent to a modification, it must be 'unequivocally referable' to the modification." Dallas Aero., Inc. v. CIS Air Corp., 352 F.3d 775, 783 (quoting Rose v. Spa Realty Assocs., 42 N.Y.2d 338, 366 (1977)). If a party's conduct is "wholly consistent" with the agreement as written, "it fails to demonstrate mutual assent to the modification." Dallas Aero, Inc., 352 F.3d at 783; see also Rose, 42 N.Y.2d at 344 (conduct establishing waiver of a right under a contract "must not otherwise be compatible with the agreement as written"); N.Y. U.C.C. § 2-208(3) ("The express terms of the agreement and any such course of performance . . . shall be construed whenever reasonable as consistent with each other.").

Here, Fleet's requests for replacement parts in no way suggest acquiescence to Roadtec's disclaimer of the implied warranty of merchantability.[7] The fact that Fleet made

---

[7] The cases cited by Roadtec are distinguishable and, in any event, do not apply New York law. In Country Clubs, Inc. v. Allis-Chalmers Mfg. Co., 430 F.2d 1394, 1396 (6th Cir. 1970), the

claims for replacement parts demonstrates only that it believed that it had this right under the "Full Machine Warranty" referenced in the Equipment Proposal. Fleet's conduct does not demonstrate that it acquiesced to, or was even aware of, any disclaimers of implied warranties. Because the parties' contract does not disclaim the implied warranty of merchantability, and because the parties' course of performance does not demonstrate that Fleet acquiesced to the disclaimer, Roadtec is not entitled to summary judgment.

## CONCLUSION

For the reasons stated above, Defendant's Motion for Summary Judgment (Dkt. No. 22) is DENIED. The Clerk of the Court is directed to terminate the motion.

Dated: New York, New York
November 24, 2010

SO ORDERED.

_____
Paul G. Gardephe
United States District Judge

---

buyer received multiple notifications of the warranty disclaimer before it decided to retain the product. Accordingly, on this basis and under Tennessee law, the court found that it had acquiesced to the disclaimer through its course of performance. Similarly, in Petroleo Brasileiro, S.A., Petrobras v. Nalco Chemical Co., 784 F. Supp. 160, 165 (D.N.J. 1992), the court – applying New Jersey law – found that the buyer was advised of the warranty limitations before entering into the transaction, and thus held that the limitations were enforceable. Here, Fleet did not receive any notice of the warranty disclaimer until after it had executed an agreement to purchase the Machine.